UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD STRICKLAND,

        Plaintiff,

v.

PATRICIA CARUSO,

        Defendant.

                                           /

Case No. 1:08-cv-94

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner. This matter is now before the court on defendant's motions for summary judgment (docket no. 23).

**I.    Background**

Plaintiff, a former prisoner at the Michigan Department of Corrections (MDOC), filed a complaint against MDOC Director Patricia Caruso, seeking relief from the Director in both her individual and official capacity. At issue was the validity of an MDOC policy directive which restricted prisoner access to Uniform Commercial Code (UCC) related materials through the mail. The January 1, 2006 version of the policy directive stated in pertinent part that:

> Prisoner are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks within a correctional facility under all circumstances and therefore shall be rejected:

                                            *    *    *

> 23.    Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the

> individual. This does not include legal materials which set forth the
> statute or provide a scholarly legal analysis of the UCC.

PD 05.03.118 ¶ HH(23) (eff. Jan. 1, 2006). *See* Exh. A attached to defendant's brief (docket no. 24-3).

Plaintiff filed this action after MDOC employees confiscated certain UCC materials from him. The court previously summarized plaintiff's allegations as follows:

> Plaintiff's complaint concerns the seizure and destruction of Uniform Commercial Code (UCC) materials that were sent to him through the mail. Specifically, on August 28, 2007, the prison mail room received a package addressed to Plaintiff containing a book entitled <u>Redemption, 4th Ed. Manual: How to Become a Secured/Party Creditor</u>, purchased from the publisher, The American Bulletin. The mail was rejected under Michigan Department of Corrections, Policy Directive 05.03.118, because the publication was on the restricted publication list. Paragraph HH(23) of the prisoner mail policy prohibits "[m]ail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC." MICH. DEP'T OF CORR., Policy Directive 05.06.118, ¶ HH(23) (eff. Jan. 1, 2006). A Notice of Package/Mail Rejection was sent to Plaintiff on August 29, 2007, informing him of the rejection and stating, "No hearing required." Plaintiff nevertheless returned the notice with a request for hearing, which was denied on September 11, 2007.
>
> On September 11, 20007, Plaintiff filed a grievance, complaining about the rejection of the mail and the denial of a hearing. He appealed the grievance denial through Step III and received the Step III response on December 19, 2007, though the response was dated November 19, 2007. The Step III response indicated that the rejection was proper because the publication had been placed on the restricted publications list in May 2007. It further indicated that no hearing was required because, under Michigan Department of Corrections, Policy Directive 05.03.118, ¶ RR, "[o]nce a publication is placed on the Restricted Publications List, it shall be rejected at all facilities without the need for a hearing to determine the basis for the rejection removed, unless otherwise indicated on the Restricted Publication List."
>
> Plaintiff claims that Defendant's policy violated his First Amendment right to receive mail. Plaintiff further claims that Defendant authorized the seizure and destruction of his personal property without just compensation in violation of his due process rights. Plaintiff also claims that the rejection of the UCC materials violated

the preliminary injunction issued by the Eastern District of Michigan in *Jones v. Caruso*, No. 05-CV-72817-DT, 2006 U.S. DIST. Lexis 70216.

Report and Recommendation at pp. 2-3, February 14, 2008, (docket no. 4).

The court dismissed plaintiff's complaint on March 13, 2008 for failure to state a claim. *See* Opinion and Order Approving Magistrate Judge's Report and Opinion (docket no. 7). Plaintiff appealed. *See Strickland v. Caruso*, No. 08-1397 (6th Cir.). The Sixth Circuit vacated and remanded the proceedings to the district court, using as the basis for its decision a case it did not decide until over a year after the dismissal of the present case:

> The district judge here dismissed the complaint *sua sponte* for failure to state a claim, without service to the defendant. In light of this court's recent decision in *Jones v. Caruso*, [569 F.3d 258 (6th Cir.)(decided June 23, 2009)], this disposition was not proper. Therefore, we **VACATE** the judgment and **REMAND** the case to the district court for further proceedings consistent with the decision in *Jones*.

*Strickland*, No. 08-1397, slip op. at p. 1 (emphasis in original).[1] The present case was re-opened in this court and plaintiff's complaint served on Director Caruso. The Director has filed a motion for summary judgment, which is now before the court.

## II. Defendant's Motions for Summary Judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

---

[1] In *Jones*, the Sixth Circuit affirmed the district court's preliminary injunction enjoining enforcement of the policy directive which regulated the prisoners' possession of UCC-related materials. *See Jones*, 569 F.3d at 260. That policy directive is the same policy directive at issue in this action.

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.   Mootness**

As an initial matter, defendant contends that this action is moot, because plaintiff was granted parole on May 28, 2009 and the relevant policy directive regarding legal mail, PD 05.03.118, "Prisoner Mail," ¶ HH(23) (eff. Jan. 1, 2006) was amended on September 14, 2009. *See*

4

Defendant's Brief at pp. 1-2 (docket no. 24); Exhs. A and B (docket nos. 24-3 and 24-4). The subsequent version of the policy directive omitted UCC-related materials as prohibited incoming mail. *See* PD 05.03.118 ¶ MM (eff. Sept. 14, 2009). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587, 596 (6th Cir. 2004). The court agrees with defendant that some aspects of plaintiff's claim are moot. Because plaintiff is no longer incarcerated by the MDOC, and is not bound by the policy directives regarding legal mail, his requests for injunctive relief regarding future mail delivery of UCC-related materials is moot. *See, e.g., Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009) (prisoner's claim for injunctive and declaratory relief is mooted by his transfer to a new facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

However, plaintiff also seeks a "punishment award" against defendant. *See* "Statement of Claim" at p. 3 (docket no. 1). The court construes plaintiff's request for this "award" as a claim for monetary damages. Accordingly, plaintiff's claim for damages that occurred while he was incarcerated and subject to the contested policy directive remain viable in this action. *See Powell*, 395 U.S. at 497 ("[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy").

## C. Eleventh Amendment Immunity

Plaintiff has sued Director Caruso in both her official and individual capacity. Plaintiff's § 1983 claims for monetary damages against the director in her official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, Director Caruso is entitled to summary judgment on plaintiff's claims for damages for acts performed in her official capacity.

## D. Qualified Immunity

Finally, Director Caruso asserts the defense of qualified immunity with respect to plaintiff's claim for damages. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In *Waeschle v. Dragovic*, 576 F.3d 539 (6th Cir. 2009), the Sixth Circuit explained the Supreme Court's recent pronouncement on the issue of qualified immunity as set forth in *Pearson v. Callahan*, 129 S. Ct. 808 (2009):

Until recently, federal courts were required to conduct the qualified-immunity analysis using the two-step sequential inquiry set forth in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The first step required courts to determine "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson*, 129 S.Ct. at 816 (citations omitted). And

> if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Id.* (citation omitted).

In *Pearson*, however, the Supreme Court held that the sequential *Saucier* protocol was no longer mandatory. *Id.* at 818. The Court reasoned that

> [t]he procedure sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right.

*Waeschle*, 576 F.3d at 543-44. This is such a case.

At the time that Director Caruso enacted the policy directive restricting prisoners' access to UCC-related materials, there were no Supreme Court or Sixth Circuit decisions clearly establishing a prisoner's right to possess UCC-related materials. For example, in *Jones*, the Sixth Circuit noted that "both the Third Circuit and a Michigan federal district court have recently concluded that the challenged types of UCC-related materials <u>are not 'legal mail</u>.'" *Jones*, 569 F.3d at 268-69 (emphasis added), citing *Monroe v. Beard*, 536 F.3d 198, 208 (3rd Cir. 2008) (upholding Pennsylvania prison regulation providing for the confiscation of UCC-related materials, publications, and information on copyrighting names because "plaintiffs still [had] available to them a wide range of legal materials and publications that do not pertain to the filing of fraudulent liens")

7

and *Umbarger v Caruso*, No. 2:06-cv-141, 2006 WL 2039979 at *7 (W.D. Mich. July 19, 2006)(determining that plaintiff's UCC materials were not "legal mail" where they were not clearly marked as "mail from an attorney or law firm, a legitimate legal-service organization, a non-prisoner paralegal working on behalf of an attorney, law firm, or legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court or a clerk of the court"). In addition, prior to the *Jones* decision, this court upheld the restrictions regarding UCC-related materials in Policy Directive 05.03.118. *See, e.g.*, *Hudson v. Michigan Department of Corrections*, No. 2:08-cv-208, 2009 WL 56759 (W.D. Jan. 8, 2009); *Lewis v. Caruso*, No. 1:08-cv-28, 2008 WL 4283682 (W.D. Mich. Sept. 10, 2008). Director Caruso's enforcement of Policy Directive 05.03.118 ¶ HH (23) did not violate plaintiff's clearly established right to receive UCC-related materials through the mail. Accordingly, the Director is entitled to qualified immunity on this claim.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that Direct Caruso's motion for summary judgment (docket no. 23) be **GRANTED** and this case dismissed.


Dated: July 20, 2010                    /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).